# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIM. NO. 25-083** |
| | | **MAG. NO. 25-326-M** |
| **v.** | : | |
| **DAVID BOLWELL** | : | |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR RECONSIDERATION OF PROBABLE CAUSE AND PRETRIAL DETENTION

The United States of America, by and through David Metcalf, United States Attorney for

the Eastern District of Pennsylvania, and Michelle Rotella, Assistant United States Attorney for

the District, submits this response in opposition to the defendant's Motion for Reconsideration

(ECF No. 12).

As set forth on the record before the Magistrate Court, the defendant stands accused of

surreptitiously recording a 14-year-old child for more than a year. Beginning as far back as

December 2023, the defendant invaded the victim's privacy by spying on her through her open

bedroom window and repeatedly photographing and video recording her in various states of

nudity, all of which he saved on his electronic devices. His fixation with this child included him

masturbating in front of her (wearing a mask so that his face could not be seen) and culminated

in him writing a sexually explicit letter to her requesting that they meet in person, which he

delivered to her on February 3, 2025, demonstrating that his crimes extended far beyond the

anonymity of his surreptitious recordings. A search of his cell phone pursuant to a search warrant

revealed more than 3,800 images and video of this child victim over more than 13 months' time,

1

and also more than 1,200 images and videos of child pornography of prepubescent children that he downloaded from the internet and saved as part of his collection.

He now faces significant and certain incarceration if convicted on the charges in the indictment: a statutory maximum of 50 years' imprisonment and a mandatory minimum of 15 years, along with numerous other monetary and reporting penalties upon conviction. For these reasons, and the reasons outlined below, the defendant is still unable to rebut the statutory presumption that no combination of conditions will assure his appearance for trial or the safety of the community, and the Magistrate's order that he is to be detained pending trial should be upheld.

## A.    <u>BACKGROUND</u>

### 1.    *Procedural History*

The defendant was originally charged by complaint and warrant issued on February 18, 2025, with one count of manufacture/attempted manufacture of child pornography in violation of 18 U.S.C. § 2251. ECF No. 1. His initial appearance was held on that same date. ECF No. 5. On February 19, 2025, the Magistrate Court held a hearing to address probable cause for the charge in the complaint as well as the defendant's detention. ECF No. 10-11. The defendant was represented by private counsel. ECF No. 9. The defendant stipulated to probable cause, and the Magistrate Court entered a finding that the complaint was supported by probable cause. The Court also ruled that the defendant had failed to rebut the presumption that he should be detained and accordingly, entered an order that the defendant would be detained pending trial in this matter. ECF No. 11.

Thereafter, on March 7, 2025, the defendant filed a Motion for Reconsideration of Bail, requesting permission to now challenge the probable cause for the complaint to which the

defendant had previously stipulated at the hearing, and requesting that the Court reconsider the same arguments that were presented at the original hearing in support of his release. ECF No. 12.

On March 11, 2025, the federal Grand Jury issued a two-count indictment against the defendant, charging him in Count One with manufacture and attempted manufacture of child pornography, in violation of 18 U.S.C. § 2251, and possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). ECF No. 13.

This memo is filed in opposition to the defendant's Motion for Reconsideration.

### 2. Criminal Conduct

The evidence in this case is strong. On February 3, 2025, the 14-year-victim reported that she was walking home from school when an unknown man approached her and handed her a handwritten, sexually explicit letter. Though the victim did not know this defendant, the letter was addressed using the child's true first name. The child turned the letter over to her mother, who then contacted Philadelphia Police. The following is a sample from the hand-written letter:

> Hi [Minor 1's first name], I'm writing this to you to let you know that I am an independant Special Investigator. I know many things about you and wanted to let you know that you could be in some pretty serious trouble. I have obtained many many photos and videos of you having group sex parties with most of your girlfriends and a few older men during your so called sleepovers. I know the truth and these pictures from your phone and other electronic devices don't lie. It seems to me that you are a very sexually active and extremely horney young girl. I know that you are frequently watching internet porn as well as what you are doing on Snapchat…sexting and sending and receiving naked selfies to your friends and older men. Sometimes even doing split-screen webcam shows while masterbating, which I know you love doing 3-4 times a night. Constantly humping your bed and playing with yourself and pinch-pulling on your little nipples. These pictures even show you giving and receiving oral sex with your different girlfriends and older men. Some of these pictures even show you letting your girlfriends suck on your tits and pics of you giving a blowjob to an older bald man. And even you jerking some guys off…..I can help you out but your really going to have to talk to me. Otherwise if

> your parents or the authorities find out you could be in trouble. Despite all
> of this I think you are so sexy and absolutely beautiful.

*See* Exhibit A (letter in its entirety), filed under seal. Alarmingly, in the letter the defendant named eight of this child's friends by first and last name, and also told her that he knew her school and that she played soccer. Additionally, the child described a pattern of disturbing incidents over the preceding year that included a man who had been shining a flashlight into her bedroom window on multiple occasions, and when she would look out, she could see a man wearing a mask who was masturbating. The child described that she was so disturbed by these incidents that she could no longer sleep in her bedroom.

Subsequent investigation by Philadelphia Police led to the identification of the defendant, David Bolwell. Police obtained surveillance footage that shows the defendant lying in wait for this child for more than 30 minutes, and when the victim neared her home, he got out of his truck, approached her, and made her take the handwritten letter he had prepared. The defendant then went into his own home on Edgemont Street. Police obtained a search warrant for the defendant's home, which was executed on February 6, 2025, and which resulted in the seizure of his Samsung Galaxy smart phone from the residence. The defendant was home at the time but declined to give a statement to police. He was not arrested pending the forensic examination of the seized phone.

A second search warrant was obtained the next day to search the contents of the seized cell phone. Review of the phone revealed *more than 3,800 images* of the 14-year-old victim[1]

---

[1] While the preliminary review of defendant's seized phone revealed hundreds of images of the child victim that constitute child pornography, the final forensic examination confirmed more than 3,800 total images and videos of this child (including hundreds which qualify as child pornography), which the defendant recorded and edited and saved by this defendant for more than 13 months as he stalked her.

taken over a 13-month period, from approximately December 30, 2023, to at least January 24, 2025, that investigators confirmed were taken from outside the child's residence as they depicted the victim in her bedroom. In these images the child was in various states of undress and nudity, with numerous images depicting her exposed breasts and vagina. Many images were zoomed in on the child's genitals, with her face cut out of the images. There were also hundreds of images of the victim in her bedroom as she changed her clothes, or used her phone, or talked with her friends.

Equally concerning, the forensic examination also found evidence that the defendant had been tracking the victim – there were a number of recordings on different dates where the defendant followed the 14-year-old victim and surreptitiously recorded her as she was walking home from school, entering/exiting her house, or simply standing in her backyard. Web history on his phone contained multiple visits to the 14-year-old girl's social media accounts, to include her Twitter "X," Instagram, and Facebook accounts.

In addition to the images of the 14-year-old victim, the forensic examination also revealed that the defendant had amassed and saved at least 300 non-pornographic images depicting minor girls that appeared to have been taken from their online social media accounts. The bulk of these images depicted two 14-year-old girls who were friends with the child victim. Although these girls did not know the defendant, he knew who they were and their relationship to the child victim, as he named them by first and last name in his letter that he delivered to the victim on February 3, 2025.

Lastly, the forensic examination of the defendant's phone also uncovered more than 1,200 images of child pornography that had been downloaded from the Internet which primarily depicted prepubescent girls who were being orally and vaginally raped by adult men, engaged in

sexual activity with other children, in acts of masturbation, and lasciviously displaying their genitals. Included amongst his collection were images and videos that depicted sadistic/masochistic abuse of these young girls as part of their molestation. Many of the children depicted in these images have been identified by the National Center for Missing and Exploited Children, their images having been trafficked all over the world.

On February 12, 2025, the defendant and his attorney appeared at the Special Victims Unit of the Philadelphia Police Department and agreed to be interviewed. Before the interview the defendant was advised of his Miranda rights with his attorney present. His attorney remained with him throughout the interview. During the interview, the defendant told investigators he photographed and video recorded the 14-year-old victim in her bedroom from within his own house using his cellphone that had been seized as part of the search warrant. The defendant admitted that some of the photos and videos he took depicted the child nude, including showing her genitals. The defendant was shown several photographs taken from the forensic examination of his seized phone which depicted the 14-year-old victim's vagina, and he admitted to taking those photographs while the child was in her bedroom. He further told investigators that he had written the letter to the victim and delivered it to her in person to let her know that he had the pictures and videos and to "help" her so that she did not get in trouble with her parents. When questioned about his collection of thousands of sexually explicit images and videos of other children that had been taken from the Internet, the defendant declined to talk about his involvement. He was then arrested at the conclusion of his statement.

### 3. *The Magistrate Hearing on Probable Cause and Detention*

A hearing was held before the Magistrate Court on February 19, 2025, to address probable cause underlying the complaint as well as the defendant's detention. Though he now

wishes to challenge probable cause for the complaint through this Motion for Reconsideration, at the time of the hearing the defendant waived his right to do so and stipulated to probable cause. *See* Exhibit B – Transcript of Hearing at 4. The defendant did not stipulate to his detention, however, instead requesting that he be released on his own recognizance.[2] The defendant argued to the Court that he was not a flight risk in that he was not a "world traveler" and had family in the area. *Id.* at 21-22. Counsel advised the Court that if he were to be released, he would not go back to his home but instead would reside with his daughter and her boyfriend at the boyfriend's home in Boyertown, Pennsylvania.[3] *Id.* at 6, 16-17. The defendant also previously advised Pretrial Services ("PTS") that he had a long history of employment at a local wallpaper company, and that if released, he would have employment at a tree removal company in Philadelphia.[4] Counsel also argued that the defendant did not present a danger to the community.

---

[2] The Pretrial Services ("PTS") Report recommended that the defendant be released on a $100,000 O/R bond (no requirement that he post any money), subject to a number of conditions. *See* Exhibit C – PTS Report at 4-5, filed under seal.

[3] Counsel erroneously advised the Court that the defendant's daughter and her boyfriend were present in Court for the hearing, but later corrected the record when the Government pointed out that it was the defendant's brother who was present, not the daughter's boyfriend. *See* Exhibit B at 18-19. The information regarding the defendant's proposed living arrangements was that the home he intended to live in is owned by the boyfriend's parents, and the boyfriend lives on a small section of the property. *See* Exhibit C at 1. There is also a rental property on the same parcel of land that is occupied by an adult woman. *Id.* However, the entirety of this information was provided by the defendant's daughter - none of the parties who live on the proposed property were interviewed or appeared in Court to confirm that the defendant would be permitted to reside there pending trial on these child sexual exploitation offenses. Nor was there a home visit conducted to ensure that there were no minors who live on or in proximity to the property. *Id.* Significantly, as noted in the PTS report, the home is located just one mile from Earl Elementary School, and approximately five miles from Boyertown High School and Boyertown Middle School. *Id.* at 2.

[4] This information was provided by the defendant and "verified" by his daughter to the PTS Officer. However, the report does not explain why this tree removal company would be willing to offer him employment from federal prison when he has no history with them whatsoever. No documentation was provided to PTS or to the Court, and no witnesses testified at the hearing, leaving the information about his work history and potential new employment completely unconfirmed. The Government recognizes that the statute provides that the evidence rules applicable to criminal trials do not apply to the presentation and consideration of information at a detention hearing. *See* 18 U.S.C. § 3142(f). However, the Government notes the lack of fulsome information concerning his proposed new residence, work history, and offer of employment, as it directly relates to the "danger to the community" factor that the Court must consider.

The Government asserted that the defendant presented a grave danger to any child in the community, by detailing the alarming aspects of his crimes – the fact that he stalked the child victim for such a long period of time and recorded her at all hours of the day and night, both inside her bedroom and while she was on the street and in her own yard. He knew her true name, even though he had never been introduced, and the true names of at least eight of her friends. He stalked their online accounts, and amassed hundreds of images of the victim and her friends. The defendant's criminal behavior and fixation with this child led him to reach out to her to have in-person contact – by his own admission, he masturbated multiple times in his bedroom and flashed his camera light into her bedroom so she would look out the window and see that he was masturbating. His fixation culminated in him approaching her as she walked home alone from school on February 3rd and handing her a sexually explicit, handwritten letter that he addressed in her true first name which he told her to read "in private." The Government also advised the Court that during this same period when he was stalking the victim and her friends, he also amassed a huge collection of more than 1,200 child pornography images and videos from the Internet which depicted the sexual abuse of prepubescent children. The Government noted that a significant and lengthy prison sentence was a certainty for this defendant upon conviction, as he faced a mandatory minimum of 15 years and an estimated Guideline range of life imprisonment.

At the conclusion of the hearing the Court noted the recommendation of PTS but found that the 17 recommended release conditions were not adequate to address the danger that the defendant presented to children in the community. *Id.* at 23-24. The Court recognized the strength of the evidence against the defendant, which included his confession to police, noting that "this is a very serious incidence of stalking." *Id.* at 23. The Court further found that the defendant presented a danger not only to the 14-year-old child victim, but also to all minor

8

children. *Id.* at 24. Accordingly, the Court ordered the defendant to be detained pending trial. *Id.*; *see also* ECF No. 11.

## B.    <u>LEGAL ARGUMENT[5]</u>

Pursuant to 18 U.S.C. § 3145(b), a defendant who has been ordered detained may file for a revocation or amendment of the Court's order. A district court's review is de novo, although it may rely on the evidence presented before the magistrate judge without conducting another hearing. *United States v. Delker*, 757 F.2d 1390, 1394-95 (3d Cir. 1985); *United States v. Koenig*, 912 F.2d 1190, 1192 (9th Cir. 1990). "In most cases the district court will find it useful to consider carefully the decision and reasoning of the magistrate." *Delker*, 757 F.2d at 1395.

Pursuant to the Bail Reform Act, a court must detain a defendant if it finds that either (a) there is clear and convincing evidence that no combination of conditions will ensure the safety of the community if he is released, or (b) a preponderance of the evidence demonstrates that no combination of conditions will ensure the appearance of the defendant as required. 18 U.S.C. §§ 3142(e) & (f); *see also United States v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986) (holding that the standard for determining whether the defendant is a risk of non-appearance under § 3142(e) is a "preponderance of the evidence").

The legislative history of the Bail Reform Act suggests that "there is a small but identifiable group of particularly dangerous defendants as to whom neither the imposition of stringent release conditions nor the prospect of release can reasonably assure the safety of the community or other persons. It is with respect to this limited group of offenders that the courts

---

[5] As an indictment was issued by the federal Grand Jury on March 11, 2025, based on a finding of probable cause, the defendant's request to litigate probable cause is moot. The Government therefore limits this response to the defendant's challenge to his detention.

must be given the power to deny release pending trial." *Delker*, 757 F.2d at 1393 (citations

omitted). Pursuant to 18 U.S.C. § 3142(e)(3)(E), there is a rebuttable presumption in favor of

detention for individuals who, like this defendant, are charged with violating 18 U.S.C. § 2251.

This presumption is based in part on the Congressional determination that "sex offenders and

child molesters are four times more likely than other violent criminals to recommit their crimes."

*Comments of Chairman Lemar Smith*, H.R. Rep. 5422; *see also United States v. Farris*, 2008

WL 1944131 (W.D. Pa. 2008).

To rebut these initial presumptions, the burden is on the defendant to produce some

credible evidence that he will appear and will not present a threat to the community. *United

States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986). Even if he satisfies his initial burden to

rebut the presumption against release, it does not completely eliminate the presumption favoring

detention from further consideration; rather, it remains a factor to be considered among those

weighed by the Court. However, rebuttal of the initial presumptions against detention shifts the

burden to the Government to demonstrate by clear and convincing evidence that the defendant is

a danger to the community, and/or by the lesser standard of a preponderance of the evidence, that

he is a risk of flight. *See United States v. Perry*, 788 F.2d 100, 115 (3rd Cir. 1986) ("The clear

and convincing standard does not even operate until the defendant has come forward with some

evidence of lack of dangerousness.").

There are four statutory factors that a court must consider in determining whether the

defendant should be detained pending trial under § 3142: (1) the nature and circumstances of the

offense charged, (2) the weight of the evidence against the person, (3) the history and

characteristics of the person, and (4) the nature and seriousness of the danger to any person or the

community that would be posed by the person's release. 18 U.S.C. §§ 3142(g)(l)-(4). In

considering those factors, the court is not bound by the "rules concerning the admissibility of evidence." 18 U.S.C. § 3142(f). Either party may proceed by proffer and the rules of evidence do not apply. *Id.* An examination of these statutory factors demonstrates this defendant's true danger to any child in the community and warrants his detention pending trial.

### 1. The Nature and Circumstances of the Offenses

The offenses charged against this defendant are some of the most serious in the federal criminal code – so serious, that Congress included a 15-year mandatory minimum term of incarceration, and the estimated Guideline range in this case calls for life imprisonment.

Child sexual exploitation crimes are undisputedly grave offenses. As the Supreme Court has explained, "[c]hild pornography harms and debases the most defenseless of our citizens. Both the State and Federal Government have sought to suppress it for many years, only to find it proliferating through the new medium of the Internet." *United States v. Williams*, 553 U.S. 285, 307 (2008). Congress, too, has explained the difficulties in successfully combating the "immense" problem of child pornography and the "rapidly-growing market" for such materials, which is fueled by new technologies that were largely unavailable when the Sentencing Guidelines were first promulgated. *See S. Rep. No. 108-2 (2003).* The dangers surrounding these types of offenses are widely recognized. *See McKune v. Lile*, 536 U.S. 24, 33 (2002) (emphasizing Department of Justice and Federal Bureau of Investigation statistics reflecting substantially increased likelihood of repeat arrests for sex offenders); *United States v. Pugh*, 515 F.3d 1179, 1199 (11th Cir.2008) (discussing influence of sexual offender recidivism in passage of various provisions in the PROTECT Act); *Report of Chairman Sensenbrenner*, H.R. Rep. 107-527, on amendment of 18 U.S.C. § 3583 (referencing studies and findings documenting (1) a significantly higher rate of recidivism among sexual predators, (2) the number of undetected

offenses which such individuals actually commit and (3) the psychological impact such offenses have on the victims); *Doe v. Bredesen*, 507 F.3d 998, 1006 (6th Cir.2007) (noting the legislative findings in numerous states passing sex offender registration systems reflecting the "undisputed high risk of recidivism" by such sex offenders).

The Third Circuit has acknowledged the dangers of child pornography and quoted Congressional findings under 18 U.S.C. § 2251 which "repeatedly stress that child pornography 'is a form of sexual abuse which can result in physical or psychological harm, or both, to the children involved.'" *United States v. MacEwan*, 445 F.3d 237, 249–50 (3d Cir. 2006) (quoting Child Pornography Prevention Act of 1996, Pub.L. No. 104–208, § 121, 110 Stat. 3009, 3009–26 (1996) (codified as amended at 18 U.S.C. § 2251)). Further, the Third Circuit quoted the same findings which indicate that "where children are used in its production, child pornography permanently records the victim's abuse and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years." *Id.* at 250. "The mere 'existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children'." *Id.* Furthermore, child pornography "inflames the desires of ... pedophiles ... who prey on children, thereby increasing the creation and distribution of child pornography and the sexual abuse and exploitation of actual children who are victimized as the result of the existence and use of these materials." *Id.*

The defendant's fixation on and targeting of this child for such an extended period demonstrates his true danger – he recorded this child over a year's time in her own home. He followed her home from school and recorded her going in and out of her own house. He stalked her personal online accounts. And he also created a collection of her sexually explicit images that

12

he saved to his own devices. He used this child to sexually gratify himself, masturbating while disguising his face and shining a flashlight into her bedroom so she would see that he was masturbating. There was no place for this child to feel safe – indeed, there was a point where she could no longer sleep in her own bedroom. He researched her name and the names of all of her friends. Not content with his sexual exploitation of this child from afar, the defendant then ventured out to meet her in person and approached her with the delusional and disturbing letter that revealed he had been recording her from her bedroom window. His abuse and exploitation of this child – as well as the dozens of additional children he victimized from the Internet – demonstrates his true danger and warrants his incarceration pending trial.

### 2.  *The Weight of the Evidence Against the Defendant*

The evidence in this case is strong, a factor also noted by the Magistrate Judge in her ruling that the defendant should be detained. The evidence includes the following:

- More than 3,800 photographs and videos of the child victim found on the defendant's cell phone, which was searched only after obtaining a search warrant.
- More than 300 photographs downloaded and saved by the defendant on the same cell phone which depict the child victim's friends
- More than 1,200 images and videos depicting the sexual abuse and exploitation of hundreds of prepubescent children, all downloaded and saved to this defendant's electronic device
- Recovery of the letter in the defendant's own handwriting that he delivered to the victim in person
- Video recordings that show the defendant parking his truck, waiting for more than 30 minutes for the victim to walk by, and then the defendant exiting the truck and approaching the victim with the letter
- The defendant's confession to police and FBI agents that he (1) photographed and recorded the child victim, including surreptitious recordings through her bedroom window where she was naked and images that were zoomed in on her genitals, (2) that he did so because he was sexually attracted to this child, (3) his admission that the images and recordings were found on the cell phone that belonged to him, and (4) his signature on still images that had been printed out and presented to him

13

during his interview with law enforcement, acknowledging that he was the person who had recorded the victim.

### 3.  *The History and Characteristics of the Person*

The defendant is 58 years of age. He is unmarried and has one grown daughter. At the time of these crimes, he lived in a home in Philadelphia with his brother. By his own report he has an "on and off" work history, but his last place of employment is no longer available to him.

Though the defendant comes before this Court without a prior criminal record, he stands in the same position as the vast majority of federal child pornography offenders who also have no prior criminal history at the time they are charged in federal court. *See* U.S. Sentencing Commission, Federal Sentencing of Child Pornography Production Offenses (October 2021), at page 25, available at https://www.ussc.gov/research/research-reports/federal-sentencing-child-pornography-production-offenses. This same Sentencing Commission Report shows that throughout the country most offenders charged with manufacture/production offenses face mandatory minimum sentences of 15 years' imprisonment, but are sentenced well above that, to decades in prison. *Id.*

### 4.  *The Nature and Seriousness of the Danger to Any Person if Released*

The defendant poses a clear danger to children in the community, and there is no condition or combination of conditions that could assure the safety of the community if he is released. There is simply no way to effectively monitor this defendant's access to children in general, and certainly not his online access to children, for the following reasons:

(1)    There is no way to prevent the defendant from purchasing or using an Internet accessible device without the knowledge of Pretrial Services. Access to the internet is possible through desktop and laptop computers, cell phones, iPods, iPads, and even gaming devices.

(2)     Storage devices can range in size, down to the size of a postage stamp, making it impossible for a Pretrial Services officer to locate. There is no way to prevent the defendant from obtaining any storage medium, and no amount of supervision that would detect it in his home or elsewhere.

(3)     There is no way to monitor whether the defendant will access the Internet – and child pornography – using a public library's computers, using family members' or friends' electronic equipment, or Internet access at any other location, given that there is free WiFi access from any number of public places.

(4)     Even if this Court were to order that computer monitoring software be installed on the defendant's cell phone or home computer(s), there would be no way to detect if he were to subvert the computer monitoring software by simply inserting a device with its own operating system into the computer being monitored, thereby bypassing the monitoring software altogether. The defendant's activities would be completely undetected, and the Pretrial Services officer – and this Court – would instead be issued a report that the defendant is in "compliance."

Indeed, it is difficult to conceive of any supervision that would detect the defendant's criminal activities. Pre-Trial Services is limited to inspection of items that are in plain view of the officers. Nor is Pretrial Services permitted to seize electronic evidence. "The ubiquitous presence of the internet and the all-encompassing nature of the information it contains are too obvious to require extensive citation or discussion." *United States v. Schenberger*, 498 F.Supp.2d 738, 745 (D.N.J. July 27, 2007) ("This Court is not persuaded that meaningful assurances can be given that defendant's access to the internet can be stopped. Even if the defendant could somehow be prohibited from viewing, or exchanging images of child pornography, it is difficult to conceive of measures that could confidently assure that defendant would not communicate with others and encourage the distribution of child pornography and related illicit activities."); *United States v. Voelker*, 489 F.3d 139, 145 (3d Cir.2007) (finding detention appropriate for a defendant charged with distributing and receiving child pornography, based on the dangers associated with child pornography offenses and the difficulty to effectively monitor

understanding the accessibility of the Internet); *see also United States v. Crossfield*, 2018 WL 4615974, *3 (E.D.Pa., J. Bartle) (District court ordered defendant to be detained, finding that "[t]he internet chat service and other applications that Crossfield is alleged to have used to view, produce, and distribute child pornography are accessible from any computer or smartphone…..it would be extremely difficult, if not impossible, to monitor Crossfield's internet usage and to assure that he will not access, share, or create child pornography while on release.").

There is simply no way to adequately supervise this defendant should he be released, nor any way to ensure compliance with any conditions this Court may impose, to eradicate the danger he poses to children in the community.

## C.    <u>CONCLUSION</u>

For all of these reasons, the defendant cannot rebut the presumption under 18 U.S.C. § 3142(f)(1)(E) that no condition or combination of conditions will reasonably assure his presence for trial or the safety of the community.

WHEREFORE, the Government respectfully requests the Court uphold the Magistrate Court's ruling and detain this defendant prior to trial.

Respectfully submitted,

DAVID METCALF
United States Attorney


*/s/ Michelle Rotella*
MICHELLE ROTELLA
Assistant United States Attorney

16

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIM. NO. 25-083** |
| | | **MAG. NO. 25-326-M** |
| **v.** | : | |
| **DAVID BOLWELL** | : | |

## RECONSIDERATION OF PRETRIAL DETENTION ORDER

AND NOW, this _____ day of March, 2025, after a hearing and argument of counsel for the government and the defendant, the Court finds that:

(a)     the government has proved by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant as required; and

(b)     the government has proved by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of other persons and the community, as required by Title 18, United States Code, Section 3142(e) and (f)(1)(E).

The Court makes the following findings of fact:

This case is appropriate for detention under Title 18, United States Code, Section 3142(e) and (f)(1)(E) because:

(a)     There is probable cause to believe, based on the indictment issued by the federal Grand Jury on March 11, 2025, that the defendant has committed the offenses of manufacture and attempted manufacture of child pornography, in violation of 18 U.S.C. § 2251, and

1

possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B).  As a result, there is a rebuttable presumption, pursuant to 18 U.S.C. § 3142(e)(3)(E), that no condition or combination of conditions will assure the safety of the community and the defendant's appearance in court.

      (b)      The evidence in this case is strong and demonstrates the defendant's extended sexual exploitation and abuse of the 14-year-old victim during which he surreptitiously recorded her as she was in her own home. Police recovered sexually explicit images and video of the child victim on the defendant's cellular phone, which was seized and searched only after obtaining search warrants. The defendant engaged in a period of targeting this child that culminated in his authoring a handwritten letter that he hand-delivered to his victim in which he attempted to coerce her into meeting up with him in person. The victim's report of this meeting is corroborated by police investigation and video recordings, as well as the defendant's statement to police. The defendant further admitted to the charged offense, in that he advised police that he photographed and videotaped this child from outside of her bedroom window as she was in various states of nudity – and he specifically identified images that he manufactured of this child's vagina. In addition to the images the defendant manufactured of the 14-year-old victim, he also downloaded thousands of sexually explicit images and video depicting additional child victims.

      (c)      If convicted on the two counts charged in the indictment, the defendant faces a maximum penalty of 50 years' imprisonment with a mandatory minimum term of 15 years, and a minimum 5 years up to a lifetime of supervised release, along with numerous other financial and reporting penalties. This significant and certain term of imprisonment provides ample incentive to flee and also increases the danger he poses to any child in the community.

2

(d)     The nature of the defendant's crimes, and the difficulty in effectively monitoring child sex offenders whose crimes include use of the Internet, also increases his danger to any child in the community.

(e)     The circumstances of the defendant's targeting of his minor victim over such an extended period of time also demonstrates his danger to this child and others in the community.

Therefore, IT IS ORDERED that the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; that the defendant be afforded reasonable opportunity for private consultation with counsel; and that, on order of a Court of the United States, or on request of an attorney for the government, the person in charge of the corrections facility in which the defendant is confined deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

BY THE COURT:


_____
HONORABLE GERALD J. PAPPERT
United States District Court Judge

3

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the Government's Motion for Pretrial Detention, and Proposed

Order was served by e-filing and email on the following defense counsel:

Gail Marr, Esquire
Counsel for Defendant
GMarr@ymalaw.com

*/s/ Michelle Rotella*
MICHELLE ROTELLA
Assistant United States Attorney

Date: March 20, 2025.

4